UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK MALIFRANDO, | No. 2:16-cv-0223 TLN GGH PS |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| REAL TIME RESOLUTIONS, INC., et al., | |
| Defendants. | |

INTRODUCTION

Plaintiff is proceeding in this action pro se and has paid the filing fee. This proceeding was referred to this court by Local Rule 302(21), pursuant to 28 U.S.C. § 636(b)(1).

Presently before the court is defendant Real Time Resolutions, Inc.'s ("Real Time") second motion to dismiss the first amended complaint ("FAC"), filed September 6, 2016. (ECF No. 20, 21.) Plaintiff has filed an opposition, to which Real Time has filed a reply.[1] (ECF Nos. 24, 27.) Also before the court is Real Time's Notice of Deficiencies in Plaintiff's Service of Complaint on Long Beach Mortgage, filed October 18, 2016, and plaintiff's response. (ECF Nos. 31, 32.) Having reviewed these filings, the court now issues the following findings and recommendations.

---

[1] The hearing on the motion was vacated on September 27, 2016, and the matter was taken under submission on the papers. (ECF No. 26.)

1

FACTUAL AND PROCEDURAL BACKGROUND

After the undersigned granted Real Time's initial motion to dismiss in part, and dismissed the complaint with leave to amend, plaintiff filed an amended complaint on August 9, 2016. It alleges that on October 11, 2004, plaintiff obtained a mortgage loan from Long Beach Mortgage Company[2] ("Long Beach"), which was secured by real property located at 842 Georgia Street, Vallejo, California.[3] (FAC, ECF No. 18 at ¶¶ 3, 13.) According to the FAC, although approving the loan, Long Beach determined that a second mortgage was required in the amount of $67,000 by fraudulently falsifying plaintiff's loan application and income, falsely listing his employer as MEGALYNX, a company he did not work for, falsely stating plaintiff had an account with Bank of America, falsely stating that plaintiff owned other real estate worth $834,000, and forging plaintiff's signature on the loan application. (Id. at ¶¶ 15- 21.) The FAC further alleges that Long Beach inflated the value of the subject property without conducting a proper audit. (Id. at ¶ 22.) Plaintiff alleges that Long Beach "subsequently went out of business" and GMAC thereafter serviced both loans. (Id. at ¶¶ 24-25.) Plaintiff claims he was unaware of the second loan until sometime after April, 2015 when he submitted a Qualified Written Request ("QWR") to Real Time and received a copy of his original loan application. (Id. at ¶ 32.) The FAC states that defendant Real Time serviced the loan subsequent to Long Beach,[4] and plaintiff eventually could not pay the loan and fell into default, and was forced to file for bankruptcy protection. (Id. at ¶¶ 26-28.)

Plaintiff alleges that he has sent QWRs to Real Time but that Real Time failed to respond in a satisfactory manner, including failing to provide updated assignments of ownership, proof of its custodial servicing obligations, "proof of purchase, affidavit of sale, and proper documentation

---

[2] Long Beach has purportedly been served with process but has not appeared in the action. (ECF No. 4.)

[3] Real Time's RJN, which has not been disputed by plaintiff, indicates that that the subject property securing the loans at issue was plaintiff's "investment property" at 515 Alabama Street, not the Georgia Street property. Plaintiff submitted these schedules under oath in conjunction with his bankruptcy petition. (RJN Ex. C, ECF No. 22 at 17-18.)

[4] Real Time may have serviced the loans subsequent to GMAC, as alleged in the original complaint. See ECF No. 1 at ¶¶ 5-6.

detailing restructure of assignments to deed of trust," as well as payment history indicating plaintiff's actual balance. (Id. at ¶ 29.)

The FAC contains claims of fraud and misrepresentation against Real Time and Long Beach, and a claim against Real Time for violations of the Real Estate Settlement Procedures Act ("RESPA"). The FAC alleges diversity jurisdiction, and seeks injunctive relief to prevent foreclosure on the subject property, an order modifying the terms of the loan to an affordable amount that reflects plaintiff's true income, damages for emotional distress, punitive damages, and attorneys' fees and costs.

DISCUSSION

      A.  Rule 12(b)(6) - Failure to State a Claim

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071. The court must construe a pro se pleading liberally to determine if it states a claim and,

prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally construed, particularly where civil rights claims are involved"); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when evaluating them under the standard announced in Iqbal).

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  Although the court may not consider a memorandum in opposition to a defendant's motion to dismiss to determine the propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

     B.   REAL TIME'S REQUEST FOR JUDICIAL NOTICE

Defendant Real Time has filed a request for judicial notice.  (ECF. no. 22.)  Real Time requests judicial notice of its Exhibits A, B, and C, which are, respectively, plaintiff's loan application, dated October 11, 2004, plaintiff's correspondence to Real Time, dated April 14, 2015, and plaintiff's Voluntary Chapter 7 Bankruptcy Petition and accompanying Schedule D (Creditors holding secured claims).  Plaintiff has not opposed the request.

A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).  However, not all court records are equal with respect to the ability to take judicial notice.  The *sine qua non* for any judicial notice request is that the information sought to be noticed is of a character that is generally known, or cannot reasonably be disputed.  Fed. R. Ev. 210(b).  Thus, for example, the facts contained in a declaration opposing a summary judgment found in another

case file could not normally be judicially noticed because those facts, with infrequent exception, would not be generally known, nor would they be facts which could not be reasonably disputed. However, the fact that a declarant uttered such facts (whether true or not) in a declaration which was filed could not be reasonably disputed assuming that proper authentication was performed. Judicial notice could be taken of the declaration in this latter example.

> As a general rule, "a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Branch, 14 F.3d at 453 (citation omitted). Rule 12(b)(6) expressly provides that when:
>
>> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
>
> Fed.R.Civ.P. 12(b)(6) (emphasis added). There are, however, two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion. First, a court may consider "material which is properly submitted as part of the complaint" on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment. Branch, 14 F.3d at 453 (citation omitted). If the documents are not physically attached to the complaint, they may be considered if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them. Parrino v. FHP, Inc., 146 F.3d 699, 705–06 (9th Cir.1998). Second, under Fed.R.Evid. 201, a court may take judicial notice of "matters of public record." Mack v. South Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir.1986).

Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001).

Exhibit C, documents filed in support of plaintiff's bankruptcy petition, will be judicially noticed as court records that are not subject to dispute, especially in light of plaintiff's declaration under penalty of perjury as to the accuracy of the summary and schedules. (ECF No. 22 at 19.)

Exhibits A and B are a different matter because they are not court records which are usually not subject to dispute. Exhibit A is purportedly plaintiff's loan application, dated October 11, 2004.

> A court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party

5

> questions the authenticity of the copy attached to the 12(b)(6) motion. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir.1994), *overruled on other grounds by* Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.2002); see also Warren, 328 F.3d at 1141 n. 5, Chambers v. Time Warner, Inc., 282 F.3d 147, 153 n. 3 (2d Cir.2002). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir.2003).

Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

As pointed out by Real Time, Exhibit A is referred to in the FAC. In fact it is central to plaintiff's claims. Both the FAC and Exhibit A contain the following information: On October 11, 2004, plaintiff purportedly signed a loan application, as did Charlotte Macasarte, which stated that he worked for Megalynx, that he earned $10,988 per month, that he had an account at Bank of America, that he owned two pieces of real estate valued at a total of $834,000, and received rental income in the amount of $7, 200 from these properties. (ECF No. 18 at ¶¶ 15-20; ECF No. 22 at 4-7.)

The question whether the application contains false information is the issue in the case, but the document itself may be judicially noticed because its authenticity as the document referenced by plaintiff in his complaint is not questioned, and because it forms the basis of plaintiff's complaint.

Exhibit B is a letter entitled "Qualified Written Request," sent by plaintiff to Real Time, and dated April 14, 2015. It also forms the basis of the claims in the FAC, which alleges that on April 14, 2015, plaintiff sent correspondence to Real Time which qualified as a QWR, "requesting pertinent documents pertaining to the Loan and requesting documentation detailing updated assignments of ownership or necessary proof of Real Time's custodial servicing obligations to GMAC." (ECF No. 18 at 7.) The FAC alleges that Real Time only responded with partial information, and to date has failed to provide certain information. (Id. at 7-8.) Exhibit B also makes certain requests pertaining to the loan at issue as asserted in the FAC, and is the document referenced in the FAC. (ECF No. 22 at 10-11.) The authenticity of the correspondence in Exhibit B is not questioned, and is central to plaintiff's claim. Therefore, the court takes judicial notice of Exhibit B.

C. RESPA Claim

The FAC continues to make a RESPA claim against Real Time. The Real Estate Settlement Procedures Act ("RESPA") imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally-related mortgage loan. 12 U.S.C. § 2605(b). A borrower may obtain such information by submitting a qualified written request or "QWR," which is statutorily defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B); see also 24 C.F.R. § 1024.31(definition of QWR in part "provides sufficient detail to the servicer regarding information relating to the servicing of the mortgage loan sought by the borrower").

Section 2605(e)(1) requires the servicer to provide information relating to the servicing of the loan upon a qualified written request ("QWR") by the borrower. The definition of servicing is "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower." 12 U.S.C. § 2605(i)(3).

On January 10, 2014, new regulations were enacted in the form of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub.L. No. 111–203, 124 Stat. 1376 (July 21, 2010), which became known as Regulation X of RESPA. The regulations were codified at 12 C.F.R. § 1024, and increase a loan servicer's duty to respond to qualified written requests (still only including the processing of a loan and not the loan validity). Guccione v. JPMorgan Chase Bank, N.A., 2015 WL 1968114, at *8 (N.D. Cal. May 1, 2015). If a mortgage loan servicer receives a QWR from a borrower, the servicer shall provide a written response acknowledging receipt within five days, 12 U.S.C. § 2605(e)(1); 12 C.F.R. § 1024.36(c), and respond to the inquiry not later than thirty days. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.36(d). The servicer must respond to a request for the identity of and address or other relevant contact information for

7

1  the owner or assignee of mortgage loan within 10 days. 12 C.F.R. § 1024.36(d)(2)(A); 12 U.S.C.

2  § 2605(k)(1)(D).

> Servicing, as defined under RESPA, "does not include the transactions and circumstances surrounding a loan's origination – facts that would be relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 666-67 (9th Cir. 2012). In Medrano, the Ninth Circuit affirmed the district court's dismissal of the RESPA claim concluding that letters from borrowers to servicer that challenged terms of the loan and mortgage documents, that loan documents did not "accurately reflect the proper payment schedule represented by the loan broker", and demanding monthly payment be reduced because borrowers were told, when they purchased their home, that those payments would not exceed $1,900 did not give rise to duty to respond. Id. at 667. Therefore, requests for documents and information "relating to the original loan transaction and its subsequent history" do not qualify as QWRs. Junod v. Dream House Mortg. Co., No. CV 11-7035-ODW(VBKx), 2012 WL 94355, at *4 (C.D. Cal. Jan. 5, 2012); see also Consumer Solutions REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (dismissing plaintiff's RESPA claim with prejudice after observing that the requirement "[t]hat a QWR must address the servicing of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan."). In addition, requests relating to loan modification are not related to "servicing" of the loan. Smallwood v. Bank of America, N.A., Case No. 15cv336, 2015 WL 7736876, at *6 (S.D. Ohio, Dec. 1, 2015) (citing "Mbakpuo v. Civil Wells Fargo Bank, N.A., No. 13-2213, 2015 WL 4485504, at *8 (D. Md. July 21, 2015) (request for a loan modification did not relate to servicing of a loan); Mayer v. EMC Morg. Corp., No 2:11-cv-147, 2014 WL 1607443, at *5-6 (N.D. Ind. April 22, 2014) (same); Van Egmond v. Wells Fargo Home Mortg., No. 12-0112, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) (RESPA only obligates loan services to respond to borrowers' requests for information relating to servicing of their loans, which does not include loan modification information)").
>
> Once a servicer receives a proper QWR, it must make corrections in the borrower's account, or conduct an investigation, provide the borrower with a written explanation and provide the contact information of someone who can assist the borrower. 12 U.S.C. § 2605(e)(2)(A)-(C).

Watson v. Bank of Am., N.A., No. 16CV513-GPC(MDD), 2016 WL 3552061, at *5–6 (S.D. Cal. June 30, 2016).  Although this court previously cited MorEquity, Inc. v. Naeem, 118 F.Supp.2d 885, 901 (N.D.Ill.2000), for the proposition that requests for information about loan origination and transfer of the loan do not trigger the protections afforded the borrower under § 2605, that

8

case was discredited by Cocroft v. HSBC Bank USA, N.A., 2012 WL 1378645 (N.D. Ill. Apr. 20, 2012), which relied on Catalan v. GMAC Mortg. Corp., 629 F.3d 676 (7th Cir.2011).  Catalan defined a QWR more broadly as "written correspondence ... from the borrower or her agent that requests information or states reasons for the borrower's belief that the account is in error."  Id. at 680.  The Seventh Circuit clarified:

> RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. The language of the provision is broad and clear. To be a qualified written request, a written correspondence must reasonably identify the borrower and account and must "include a statement of the reasons for the belief of the borrower, *to the extent applicable*, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B) (emphasis added). Any reasonably stated written request for account information can be a qualified written request. To the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond.

Id. at 687.

The findings and recommendations issued July 14, 2016, which permitted amendment of the RESPA claim, directed plaintiff to submit the April 14, 2015 letter which he claims was a QWR, and directed him to properly plead the actual pecuniary damages he suffered, as well as how Real Time caused those damages.  (ECF No. 17 at 6-8.)

Although plaintiff's FAC does nothing to cure the defects of the original complaint, but is in fact almost a duplicate of the original complaint, based on the aforementioned authority, plaintiff must be permitted to proceed as a very limited portion of his correspondence to Real Time meets the definition of a QWR.

Plaintiff asserts that he made a QWR to Real Time on April 14, 2015, and that Real Time "failed to respond in a proper and timely way."  (FAC ¶ 52, ECF No. 18 at 17.)  Specifically, plaintiff alleges that he requested "pertinent documents pertaining to the Loan and requesting documentation detailing updated assignments of ownership or necessary proof of Real Time's custodial servicing obligations to GMAC."  (FAC ¶ 51, ECF No. 18 at 17.)  According to the

1  FAC, not only did Real Time fail to respond to this request for information, but "also failed to
2  provide evidence of documentation, detailing updated assignments of ownership or necessary
3  proof of their custodial servicing obligations to GMAC per RESPA and FDCPA guidelines
4  surrounding mortgage debt validation." The FAC also claims that Real Time failed to provide
5  "proof of purchase, affidavit of sale, and proper documentation detailing restructure of
6  assignments to deed of trust. Furthermore, Plaintiff has received no payment history that would
7  accurately reflect his actual balance." (Id.)

8  Plaintiff was ordered to amend his complaint to properly plead that his correspondence to
9  Real Time qualified as a QWR, but in spite of that directive, plaintiff has failed to more
10 specifically plead this claim in his FAC. As pointed out above, plaintiff's third claim for relief
11 under RESPA is virtually identical to the same claim in his original complaint. Plaintiff has also
12 failed to file the document he claims is his QWR, as ordered by the court; however, Real Time
13 has filed this April 14, 2015 letter and plaintiff does not dispute it. See RJN Ex. B, ECF No. 22 at
14 10-11.

15 Real Time previously argued in conjunction with its first motion to dismiss, that requests
16 for documents proving the bank's authority to service the loan or those pertaining to the servicer's
17 compensation are not properly the subject of a QWR. According to Real Time's cited case,
18 Sheely v. Bank of America, N.A., 36 F.Supp.3d 1364, 1369 (N.D. Ga. 2014), citing §
19 2605(e)(1)(A), the QWR must seek "information related to the servicing of the loan."

> And servicing is defined narrowly: "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." § 2605(i)(3); see also 12 C.F.R. § 1024.2.

24 Id.

25 However, as cited in the authority set forth above, both the controlling statute and
26 regulatory definitions include "information relating to the servicing of the mortgage" within the
27 ambit of a QWR. See §2605 (e)(1)B) (request contains sufficient details for "other information
28 sought by the borrower"); 12 CFR § 1024-31 (information relating to the servicing of the loan").

10

1    While this "relationship" must have some direct nexus with loan servicing, and cannot be
2    construed as having everything and anything to do with a mortgage, the general nature of these
3    words connote something more than an accounting statement.
4         Plaintiff's allegations concerning the contents of this letter and how it qualified as a QWR
5    are too vague; however, the undersigned has reviewed the letter itself.  It requests the following
6    information: "original 1003 loan application, good faith estimate, HUD-1 settlements statement,
7    "current promissory note," the letter evidencing transfer of debt, with any addendums to the
8    promissory note, and an "affidavit of debt."  Most of these items pertain to the origination of the
9    loan and therefore do not qualify as the subject of a QWR.  Furthermore, whether plaintiff agrees
10   that his payment history is accurate or not, is not relevant to a QWR under the RESPA.[5]  The
11   letter also fails to include a statement of the reasons for the belief of the borrower that the account
12   is in error.  12 U.S.C. § 2605(e)(1)(B).  Nevertheless, requests for information about Real Time's
13   acquisition of the right to service plaintiff's loan as well as how the mortgage terms permitted
14   Real Time to assume the servicing duties appear to be permitted by § 2605(e)(1)(B) and 12
15   C.F.R. § 1024.31.  Therefore, the only request which might be liberally interpreted to constitute a
16   QWR is the request for a letter evidencing transfer of debt.
17        Therefore, Real Time's motion to dismiss on the basis that plaintiff's correspondence was
18   not a QWR, will be denied only to the extent that the letter requests information on the transfer of
19   the debt.  It will be granted in respect to the other information sought by the April 14, 2015 letter.
20        Real Time also moves to dismiss the RESPA claim on the basis that plaintiff has failed to
21   plead actual damages.  As in the complaint, the FAC alleges only that plaintiff "suffered damages
22   as a result of Real Time's failure to respond to Plaintiff's qualified written requests for
23   information," and seeks "actual, statutory, treble and/or punitive damages…."  (FAC ¶¶ 53, 54
24   ECF No. 18 at 17.)  Plaintiff's opposition adds no elucidating information, other than referencing
25   paragraphs 1 to 47 of the FAC, and claiming he "was damaged as a result of making numerous

---

[5] Furthermore, there is no right to a loan modification in the first instance. Cal. Civ. Code § 2923.4; see Mabry v. Sup. Ct., 185 Cal. App. 4th 208 (2010).

11

payments towards a fraudulent loan, while unjustly enriching Defendant in the process." (Opp'n, ECF No. 24 at 7.)

Paragraphs 41 and 49, which contain damage allegations pertaining to the first and second claims for fraud and misrepresentation, state that plaintiff was damaged making mortgage payments on his first loan which were inappropriately applied to the second loan, of which he was not aware and which was fraudulently procured. Plaintiff alleges that defendants were benefitted financially from the misapplication of his payments which caused him to fall further into foreclosure proceedings. Other damages alleged are court fees, slander to his reputation, damage to his credit, and his bankruptcy filing, which further injured his reputation. (FAC ¶¶ 41, 49.)

According to Watson, "courts have 'liberally' interpreted the requirement to plead actual damages." 2016 WL 3552061, at *12, citing Yulaeva v. Greenpoint Mortg. Funding, Inc., No. 09-1504 LKK KJM, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 9, 2009). Watson also states that actual damages may include overpayment of interest, costs of repairing plaintiff's credit, reduction in plaintiff's credit limit, attorney's fees and costs, and possibly emotional distress and mental anguish. Id.

Although the FAC does not clarify or explain the damage allegations, they are sufficient under Watson as currently pled, at least adequate enough to survive a motion to dismiss. See 12 U.S.C. § 2605(f) (actual damages must have been suffered as a result of the failure).

Nevertheless, whether these damage allegations are sufficient to impose liability on Real Time in the long run is another question. Plaintiff does not allege what damage he suffered as a result of Real Time's alleged failure to properly and timely respond to his QWR in 2015. In fact, as Real Time points out, plaintiff does not allege that he made any payments to Real Time after he submitted a QWR in April, 2015. Moreover, plaintiff concedes he was in default on his loan, and that he eventually stopped making payments because he could no longer afford it.[6] (FAC ¶¶ 27, 28, ECF No. 18 at 6.)

---

[6] Plaintiff filed for bankruptcy protection in 2012, and that action was closed the same year. See https://ecf.caeb.uscourts.gov. Judicial notice may be taken of court records. Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D.Cal.1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126, 102 S.Ct. 976 (1981).

12

Furthermore, Real Time accurately points out that plaintiff's bankruptcy was filed in 2012, and therefore any failure or inadequate response by Real Time to his QWR in 2015, years later, could not have caused his bankruptcy. See RJN Ex. C, ECF No. 22 at 13-19. Additionally, the bankruptcy documents indicate that plaintiff was aware of the second loan in 2012, when he filed the bankruptcy documents under penalty of perjury, refuting his statement that "he was not aware of the Second Loan until he consulted knowledgeable third parties and submitted a qualified written request on April 14, 2015." (RJN Ex. C, ECF No. 22 at 17-19; Opp'n, ECF No. 24 at 4:10-12.) See Lal v. Am. Home Servicing, Inc., 680 F.Supp.2d 1218, 1223 (E.D. Cal. 2010) (to comply with RESPA, plaintiff must plead actual damages incurred *as a result of* the failure) (emphasis in original).

In spite of the conclusory manner in which damages are alleged in the FAC, and the undersigned's doubts as to Real Time's failure to respond to a QWR being the cause of these alleged damages, Watson permits the case to proceed on the FAC as the damages are currently pled. Therefore, Real Time's motion to dismiss will be denied on this basis until the issue of damages can be further fleshed out.

### D. FRAUD AND MISREPRESENTATION CLAIMS

Real Time alleges that plaintiff's fraud claim is time barred, that he has not alleged facts of wrongdoing by Real Time, that any damages were not caused by Real Time, and that plaintiff has failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

The elements of a fraud claim under California law are: "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." Conroy v. Regents of Univ. of Cal., 45 Cal.4th 1244, 1255, 91 Cal.Rptr.3d 532, 203 P.3d 1127, 1135 (2009); *accord* Lazar v. Superior Court, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981, 984 (1996). In addition, as stated above, a claim for fraud must be pled with particularity, see Fed.R.Civ.P. 9(b). At the very least, a plaintiff alleging fraud must plead evidentiary facts such as the "'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (quoting Edwards v. Marin

13

Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)).  The Ninth Circuit has "interpreted Rule 9(b) to mean that the pleader must state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation."  Alan Neuman Prods., Inc. v. Albright, 862 F.2d 1388, 1393 (9th Cir.1988).  See also Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997) ("fraud allegations must be accompanied by 'the who, what, when, where, and how' of the misconduct alleged").  When asserting a fraud claim against a corporation, "the plaintiff's burden ... is even greater.... The plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'"  Lazar, 12 Cal.4th at 645, 49 Cal.Rptr.2d 377, 909 P.2d 981 (quoting Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991)).  See also Spencer v. DHI Mortgage Co., No. CV F 09–0925 LJO DLB, 2009 WL 1930161, at *6 (E.D.Cal. June 30, 2009).

       The merits of plaintiff's fraud and misrepresentation claims will not be reached as they are barred by the statute of limitations.  A claim for fraud must be brought within three years of the "discovery, by the aggrieved party, of the facts constituting the fraud…."  Cal. Code Civ. P. § 338(d).  See also Harrell v. 20th Century Ins. Co., 934 F.2d 203, 206 (9th Cir.1991) (noting that "under the California statute of limitations for fraud, the three-year period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud.").  "Plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation."  Rosal v. First Federal Bank of California, 671 F.Supp.2d 1111, 1131 (N.D. Cal. 2009) (*citing* Fox v. Ethicon Endo–Surgery, Inc., 35 Cal.4th 797, 807–08, 27 Cal.Rptr.3d 661, 110 P.3d 914 (2005)).  The statute of limitations for negligent misrepresentation is two years.  Cal. Code Civ. P. § 335.1.

       The bankruptcy records indicate that plaintiff was aware of the existence of the second deed of trust on the Alabama Street rental property on July 24, 2012 at the very latest.  RJN Ex. C, ECF No. 22 at 17-19.  He filed the instant action on February 4, 2016, more than three years after he discovered the alleged fraud.  Although plaintiff claims that these records only indicated

his awareness of the Alabama Street property and that he was not aware of the second loan until he consulted with knowledgeable third parties in April, 2015, the records themselves do reflect the second deed of trust. Plaintiff signed these bankruptcy schedules under penalty of perjury. Id. Furthermore, as pointed out by Real Time, the bankruptcy records indicate that two servicers, Chase and GMAC, were collecting payments on the two loans and therefore plaintiff would have to have been aware that he was paying two servicers and consequently paying off two loans. Id. at 18. Therefore, any claims predicated on allegedly false representations made at the time of the origination of the loan are barred by the statute of limitations, and must be dismissed.

### E. DEFENDANT LONG BEACH MORTGAGE COMPANY

According to the court record, defendant Long Beach was served with summons on February 9, 2016, but has not responded to the complaint. (ECF No. 4.) See Fed. R. Civ. P. 12(a) (responsive pleading due within twenty-one (21) days). The complaint concedes that Long Beach had legal troubles, and the FAC states that Long Beach "subsequently went out of business due to governmental prosecutions for fraudulent activity." (FAC ¶ 24, ECF No. 18 at 6.) Despite plaintiff's knowledge of this information, he proceeded to file a request for entry of default pursuant to the court's order. See ECF Nos. 26, 30.

On October 18, 2016, Real Time filed a notice of deficiencies in plaintiff's service of complaint on Long Beach, in order to inform the court that according to the California Secretary of State website, Long Beach surrendered its corporate status in California which acted to revoke its agent for service of process. (ECF No. 31-1 at 4.) Based on this official record, of which the court takes judicial notice, as well as plaintiff's concession that Long Beach "went out of business," and "is no longer operating," (ECF No. 32 at 2), Long Beach is not a viable defendant for purposes of service.[7] Should plaintiff attempt to file a motion for default judgment as the court previously ordered, it will be denied.

Moreover, Long Beach must be dismissed on the merits in any event. "A District Court may properly on its own motion dismiss an action as to defendants who have not moved to

---

[7] Pursuant to www.publicintegrity.org, Long Beach was closed by Washington Mutual in 2007.

15

dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related." Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981). "Such a dismissal may be made without notice where the [plaintiff] cannot possibly win relief." Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987). The court's authority in this regard includes *sua sponte* dismissal as to defendants who have not been served and defendants who have not yet answered or appeared. Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802 (9th Cir. 1995) ("We have upheld dismissal with prejudice in favor of a party which had not yet appeared, on the basis of facts presented by other defendants which had appeared."); see also Bach v. Mason, 190 F.R.D. 567, 571 (D. Idaho 1999); Ricotta v. California, 4 F. Supp. 2d 961, 978-79 (S.D. Cal. 1998).

The only claims against defendant Long Beach are for fraud and misrepresentation. Based on the discussion above, these claims against Long Beach or its successors in interest are barred by the statute of limitations. This defendant should therefore be dismissed.

CONCLUSION

Accordingly, IT IS ORDERED that: Defendant Real Time Resolution Inc.'s Request for Judicial Notice, filed September 6, 2016, (ECF No. 22), is granted.

IT IS HEREBY RECOMMENDED that:

1. Defendant Real Time Resolution Inc.'s motion to dismiss the first amended complaint, filed September 6, 2016, (ECF No. 20), be granted in part and denied in part;
2. The fraud and misrepresentation claims be dismissed;
3. Within thirty days of an order adopting these findings and recommendations, defendant Real Time be directed to file an answer to the RESPA claim as narrowly defined in these findings and recommendations; and
4. Defendant Long Beach Mortgage Company be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written

1 objections with the court and serve a copy on all parties.  Such a document should be captioned

2 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3 shall be served and filed within ten days after service of the objections.  The parties are advised

4 that failure to file objections within the specified time may waive the right to appeal the District

5 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

6 Dated: November 26, 2016

<u>/s/ Gregory G. Hollows</u><br>
UNITED STATES MAGISTRATE JUDGE

GGH:076/Malifrando0223.fr